UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

ICP Solar Technologies, Inc.,
    Plaintiff,

    v.                            Civil No. 05-cv-111-SM
                                         Opinion No. 2006 DNH 009
TAB Consulting, Inc. d/b/a
TAB Distribution,
    Defendant

# O R D E R

ICP Solar Technologies, Inc. ("Solar Tech") brings this action against TAB Consulting, Inc. ("TAB"), seeking injunctive relief and damages for alleged acts of false advertising, copyright infringement, unfair trade practices, and conversion. This suit arises out of TAB's allegedly unlawful use, in both promotional materials and product packaging, of copyrighted photographs owned by ICP Solar Technologies, Inc.

Before the court is TAB's motion to dismiss, in which it asserts that: (1) the court lacks personal jurisdiction over it; and (2) New Hampshire is not the appropriate forum in which to resolve this dispute. Solar Tech objects. For the reasons set forth below, TAB's motion to dismiss is granted.

**Standard of Review**

When personal jurisdiction is contested, the plaintiff bears
the burden of establishing that the court has such jurisdiction.
See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995);
Kowalski v. Doherty, Wallace, Pillsbury & Murphy, 787 F.2d 7, 8
(1st Cir. 1986).  Allegations of jurisdictional facts are
construed in the plaintiff's favor, see Buckley v. Bourdon, 682
F. Supp. 95, 98 (D.N.H. 1988), and, if the court proceeds based
upon the written submissions of the parties without an
evidentiary hearing, the plaintiff need only make a prima facie
showing that jurisdiction exists.  See Kowalski, 787 F.2d at 8;
Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-75 (1st Cir.
1992).

Nevertheless, in order to defeat a defendant's motion to
dismiss, the plaintiff's demonstration of personal jurisdiction
must be based on specific facts set forth in the record.  See
TicketMaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir.
1994).  And, when "reviewing the record before it, a court 'may
consider pleadings, affidavits, and other evidentiary materials
without converting the motion to dismiss to a motion for summary

2

judgment.'" <u>VDI Technologies v. Price</u>, 781 F. Supp. 85, 87

(D.N.H. 1991) (quoting <u>Lex Computer & Management Corp. v.</u>

<u>Eslinger & Pelton, P.C.</u>, 676 F. Supp. 399, 402 (D.N.H. 1987)).


     Because at least some of Solar Tech's claims arise under

federal law, the court's inquiry into whether it may exercise

personal jurisdiction over TAB is necessarily distinct from the

inquiry applicable in diversity cases.  <u>See generally</u> <u>United</u>

<u>Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080 (1st Cir.

1992).  In a federal question case, "the constitutional limits of

the court's personal jurisdiction are fixed . . . not by the

Fourteenth Amendment but by the Due Process Clause of the Fifth

Amendment." <u>Id</u>. at 1085.  This distinction is important "because

under the Fifth Amendment, a plaintiff need only show that the

defendant has adequate contacts with the United States as a

whole, rather than with a particular state." <u>United States v.</u>

<u>Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir. 2001).

Importantly, however, "the plaintiff must still ground its

service of process in a federal statute or civil rule." <u>Id</u>.  In

other words, Solar Tech must demonstrate either: (1) that a

federal statute invoked in its complaint authorizes nation-wide

service of process; or (2) that defendants were served with a
copy of its complaint in a way that comports with the
requirements of Rule 4 of the Federal Rules of Civil Procedure.

Here, neither of the federal statutes under which Solar Tech
brings its claims authorizes national service of process.  Solar
Tech does not argue to the contrary.  Consequently, the Federal
Rules of Civil Procedure provide that Solar Tech must demonstrate
that TAB was served in a manner consistent with New Hampshire's
long-arm statute.  <u>See</u> Fed. R. Civ. P. 4(e).  New Hampshire's
corporate long-arm statute, RSA 293-A:15.10, authorizes
jurisdiction over foreign corporations and unregistered
professional associations to the full extent permitted by federal
law.  <u>See</u> <u>Sawtelle</u>, 70 F.3d at 1388.  Stated another way, New
Hampshire's corporate long-arm statute is coextensive with the
outer limits of due process protection under the federal
constitution.  Accordingly, the court need only determine whether
the exercise of personal jurisdiction over a foreign defendant
would comport with federal constitutional guarantees.

> Hence, our analysis comes full circle.  When
> insufficient statutory authorization for
> extraterritorial service exists, Rule 4(e) allows such

> service "only to the extent permitted by the law of the
> state in which the district court sits."  It follows
> that, absent a federal statute permitting service of
> process on [defendant] . . . , our threshold inquiry
> must focus on [state] law concerning personal
> jurisdiction, notwithstanding that this is a federal
> question case.  And, because state law is subject to
> Fourteenth Amendment limitations, the minimum contacts
> doctrine, while imposing no direct state-by-state
> constraint on a federal court in a federal question
> case, acts indirectly as a governing mechanism for the
> exercise of personal jurisdiction.

United Elec. Workers, 960 F.2d at 1086 (citation omitted).


Ultimately, then, as in a diversity case, Solar Tech must

show that TAB has "certain minimum contacts with the forum such

that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice," Helicopteros

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)

(citation and internal punctuation omitted), and that the

defendant's conduct bears such a "substantial connection with the

forum State" that it "should reasonably anticipate being haled

into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462,

473-75 (1985) (citing World-Wide Volkswagen Corp. v. Woodson, 444

U.S. 286, 297 (1980)).  The court of appeals for this circuit has

summarized these jurisdictional requirements as follows:

> To begin, the defendant must have purposeful "minimum
> contacts" with the state.  Further, the exercise of
> jurisdiction must be "reasonable" under the
> circumstances.  The third requirement . . . is that the
> plaintiff's claims be related to the defendant's
> contacts.

Cambridge Literary Props. v. W. Goebel Porzellanfabrik G.m.b.H &
Co., 295 F.3d 59, 63 (1st Cir. 2002) (citation omitted).

## Background

I.   The Parties.

     Neither Solar Tech nor TAB is a New Hampshire corporation,
nor does it appear that either has any offices, employees, or
agents in this forum.  Solar Tech is a Canadian company that
maintains its principal place of business in Montreal, Quebec.
It manufactures and sells solar panels and accompanying battery
charger units, designed for use where access to electrical
service is difficult or impossible (e.g., on boats, in campers or
recreational vehicles in remote locations, etc.).  Solar Tech
sells its products throughout the United States, including New
Hampshire, through specialty stores, Internet retailers, and
regional and national distributors, such as West Marine, Inc.
Its products are sold under its own name, as well as that of some

6

of its distributors.  So, for example, Solar Tech says that some
of its products are sold under the "Coleman" brand label for the
outdoor recreation market.

Defendant, TAB, is a California company that maintains its
principal place of business in Lake Forest, California.  It
recently entered the business of selling solar panels and battery
charger units, as one of Solar Tech's competitors.  Its products
are sold through retail store outlets, mail order catalog houses,
and Internet retailers.  According to Solar Tech, TAB's retail
distribution chain includes some of the same dealers that also
sell Solar Tech products, like West Marine (which operates two
retail stores in New Hampshire).  TAB also briefly offered its
products for sale through its own Web site.

In general terms, Solar Tech claims that TAB has unlawfully
copied photographs of Solar Tech products, altered them slightly
to remove the Solar Tech label, and utilized them in printed
advertising materials.  All of this was done, says Solar Tech, in
an attempt to pass TAB's products off as Solar Tech products.
Solar Tech says TAB has utilized (and continues to utilize) those

photographs in violation of Solar Tech's registered copyrights.
It also claims that TAB's allegedly unlawful use of those
copyrighted photographs and related deceptive advertising amounts
to a violation of the Lanham Act, as well a common law conversion
and a violation of the New Hampshire Consumer Protection Act.

II.  <u>TAB's New Hampshire Contacts</u>.

As noted above, TAB is a California corporation, with a
principal place of business in Lake Forest, California.  It does
not own property in New Hampshire, maintain an office in New
Hampshire, or have any agents or employees in New Hampshire.  Nor
is it licensed to conduct business in New Hampshire.  It's
primary business is the sale of discounted computer software,
largely through its Internet Web site.  It entered the business
of selling solar panels and solar-powered battery chargers in or
around 2004.

TAB sells its solar panels and battery chargers through
dealers, who then sell them to retail customers; TAB does not
sell directly to the consumer (except for a brief period of time
during which it offered solar products through its Web site –

during that time, however, no sales of solar panels or charging units were made through the Web site).  TAB has never shipped any of its solar panels or solar-powered battery chargers to facilities in New Hampshire.  But, one of the dealers through which TAB formerly sold its solar products – West Marine – does have two stores that are located in New Hampshire.  According to TAB, it does not have any record of any of its solar products having ever been sold by West Marine in New Hampshire.

Nevertheless, Solar Tech says that, on June 6, 2005 (after it initiated this litigation), a paralegal at the offices of its attorneys visited one of the two West Marine stores in New Hampshire and: (a) observed a catalog containing the allegedly infringing photographs; and (b) purchased a solar-powered battery charger under the West Marine "Sea-Fit" brand name that was packaged in a box prominently displaying the allegedly infringing photographs.  Solar Tech implies that TAB was the source of those photographs and/or the battery charger that was sold under West Marine's house label.  But, according to TAB, West Marine stopped purchasing its products nearly two years earlier, in or about September of 2004.

So, construing the record in the light most favorable to Solar Tech, TAB's contacts with this forum can be summarized as follows:

1.  For a period of time in 2004, TAB displayed and offered its solar products for sale through its Web site, which could have been viewed by citizens of New Hampshire (though no sales were ever made over the Internet to New Hampshire citizens, nor is there any evidence that residents of New Hampshire actually visited TAB's Web site);

2.  TAB's chain of distribution for its solar products includes retailers who have a physical presence in New Hampshire;

3.  TAB allegedly provided some of the distributors of its solar products with copies of the infringing photographs, which were then used in advertising materials and on Web sites, all of which could have been seen by New Hampshire residents;

4.  West Marine used copies of those allegedly infringing photographs in its catalog, which was available in at least one of its two New Hampshire stores; and, finally,

5.  A paralegal at the offices of Solar Tech's legal counsel purchased a West Marine "Sea-Fit" solar-powered battery charger from that same store, which was packaged in a box that prominently displayed the allegedly infringing photographs (which, as noted above, Solar Tech implicitly suggests were provided by TAB).

In response to Solar Tech's assertions, in his uncontested affidavit, Tony Berendes, the president of TAB, states that: (1) TAB's dealers (like West Marine) are responsible for "creating their own packaging and sell the TAB Solar Products under their own brand names"; and (2) "TAB does not exercise any control over the content or design of the packaging utilized by [TAB's] dealers."  Exhibit 1 to defendant's memorandum, Berendes affidavit at paras. 18 and 19.  Unfortunately, however, that affidavit stops short of providing the court with potentially important information.  Regardless of who may have "designed" the West Marine packaging, it remains unclear whether TAB actually provided West Marine with the allegedly infringing photographs that were used in West Marine's advertising and product packaging.  For purposes of resolving TAB's pending motion, the court will assume that TAB did, in fact, provide West Marine with the allegedly infringing photographs.

## Discussion

A court may exercise either general or specific personal jurisdiction over a defendant.  "General jurisdiction exists when the litigation is not directly founded on the defendant's forum-

11

based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." <u>United Elec. Workers</u>, 960 F.2d at 1088.  Here, Solar Tech does not contend that TAB engaged in "continuous and systematic activity" in New Hampshire, nor does it ask the court to exercise general jurisdiction over TAB.  Accordingly, if the court may properly exercise personal jurisdiction over this defendant, it must be specific jurisdiction.

A court may exercise specific jurisdiction when the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.  <u>United Elec. Workers</u>, 960 F.2d at 1088-89.  In an effort to assist district courts in determining whether they might properly exercise specific jurisdiction, the Court of Appeals has formulated a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

12

Id. at 1089.  An "affirmative finding on each of the three
elements of the test is required to support a finding of specific
jurisdiction."  Phillips Exeter Academy v. Howard Phillips Fund,
Inc., 196 F.3d 284, 288 (1st Cir. 1999) (footnote omitted).
Here, the court will focus on the "purposeful availment" prong of
the applicable test.

In support of its assertion that TAB has purposefully
availed itself of the privilege of conducting business in New
Hampshire, Solar Tech says:

> TAB voluntarily, willingly, and purposefully operated
> an Internet website which advertised and offered the
> infringing product for sale in New Hampshire and which
> transmitted infringing copie[s] of [Solar Tech's]
> photographs to New Hampshire residents.  TAB also
> voluntarily, willingly, and purposefully sold
> infringing products in New Hampshire through its
> dealers.  These contacts are such that TAB should have
> reasonably anticipated being haled into court in New
> Hampshire.

Plaintiff's memorandum at 9.  The court disagrees.

I.   <u>TAB's Web Site</u>.

    The mere fact that an entity operates a commercial, interactive Web site does not, without more, subject that entity to jurisdiction anywhere in the world.  <u>See</u> <u>Toys "R" Us, Inc. v. Step Two, S.A.</u>, 318 F.3d 446, 454 (3d Cir. 2003).  In determining whether the operation of a Web site is sufficient to warrant the exercise of personal jurisdiction in a particular forum, a number of courts have embraced the analysis set forth in <u>Zippo Mfg. Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997).  <u>See, e.g.</u>, <u>Step Two</u>, 318 F.3d at 452 (calling <u>Zippo</u> a "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site.").  <u>See also</u> <u>Dagesse v. Plant Hotel N.V.</u>, 113 F. Supp. 2d 211, 221 (D.N.H. 2000) (Barbadoro, J.).


    In <u>Zippo</u>, the court concluded that, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."  <u>Id</u>. at 1124.  Accordingly, the court developed a "sliding scale," by which to assess whether the amount of commercial activity

14

conducted over the Internet by a defendant is sufficient to

warrant the conclusion that it has purposefully availed itself of

the privileges and benefits of conducting business in a

particular forum.

> At one end of the spectrum are situations where a
> defendant clearly does business over the Internet.  If
> the defendant enters into contracts with residents of a
> foreign jurisdiction that involve the knowing and
> repeated transmission of computer files over the
> Internet, personal jurisdiction is proper.  At the
> opposite end are situations where a defendant has
> simply posted information on an Internet Web site which
> is accessible to users in foreign jurisdictions.  A
> passive Web site that does little more than make
> information available to those who are interested in it
> is not grounds for the exercise of personal
> jurisdiction.  The middle ground is occupied by
> interactive Web sites where a user can exchange
> information with the host computer.  In these cases,
> the exercise of jurisdiction is determined by examining
> the level of interactivity and commercial nature of the
> exchange that occurs on the Web site [with residents of
> the forum state].

Zippo, 952 F. Supp. at 1124.  Here, plainly, TAB does not fall

into the first category; there is no suggestion that it entered

into any contracts with residents of New Hampshire through its

Web site or that it knowingly and intentionally transferred files

through its Web site to this forum.  Nor, however, would it be

entirely fair or accurate to characterize TAB's Web site as

15

strictly "passive."  Although TAB stopped selling its solar

panels and chargers through that Web site in 2004, the site did

(briefly) offer users the opportunity to purchase those items

from TAB and, therefore, acted as a means by which TAB could

enter into contracts with distant consumers and sell its products

in remote forums.


    Because its Web site falls into the middle ground on the

Zippo court's sliding scale, resolution of the personal

jurisdiction question must involve an inquiry into the level of

the interactivity between TAB and residents of New Hampshire and

an examination of the commercial nature of that interactivity.

It is, however, undisputed that TAB never made any sales of the

allegedly infringing products to residents of New Hampshire

through its Web site – in fact, it appears that it has never made

any Internet sales of those products before it removed them from

its Web site.  Nor is there any record evidence that TAB fielded

any product-related inquiries from New Hampshire residents or

that it used its Web site to specifically target the New

Hampshire retail market.  See, e.g., Step Two, 318 F.3d at 454

("[T]here must be evidence that the defendant 'purposefully

16

availed' itself of conducting activity in the forum state, by
directly targeting its web site to the state, knowingly
interacting with residents of the forum state via its web site,
or through sufficient other related contacts."); Shamsuddin v.
Vitamin Research Prods., 346 F. Supp. 2d 804, 813 (D. Md. 2004)
("Website interactivity is important only insofar as it reflects
commercial activity, and then only insofar as that commercial
activity demonstrates purposeful targeting of residents of the
forum state or purposeful availment of the benefits or privileges
of the forum state.").

     What is left, then, with regard to TAB's Internet activities
is the fact that TAB advertised its products on its Web site –
advertisements that could have been viewed by New Hampshire
residents (though there is no evidence that any New Hampshire
resident ever visited TAB's Web site).  Such activity, however,
is of the sort described by the Zippo court as "passive" and an
insufficient basis upon which to ground the exercise of personal
jurisdiction.  As several courts have noted, merely advertising
products for sale on the Internet is not enough; "something more"

is required before a court may properly exercise personal

jurisdiction over a foreign defendant.

> To put the principle broadly, the mere existence of a
> website that is visible in a forum and that gives
> information about a company and its products is not
> enough, by itself, to subject a defendant to personal
> jurisdiction in that forum.
>
> Something more is necessary, such as interactive
> features which allow the successful online ordering of
> the defendant's products.  The mere existence of a
> website does not show that a defendant is directing its
> business activities towards every forum where the
> website is visible; as well, given the omnipresence of
> Internet websites today, allowing personal jurisdiction
> to be premised on such a contact alone would
> "eviscerate" the limits on a state's jurisdiction over
> out-of-state or foreign defendants.

McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005) (citations

omitted).  See also Cybersell, Inc. v. Cybersell, Inc. 130 F.3d

414, 418 (9th Cir. 1997); Young v. New Haven Advocate, 315 F.3d

256, 263 (4th Cir. 2002).  Here, that "something more" is

lacking.


II.   TAB's Contacts with Retailers in New Hampshire.

     In addition to pointing to TAB's Internet activities as a

basis for the court to exercise personal jurisdiction over it,

18

Solar Tech also asserts that TAB purposefully availed itself of
the privilege of conducting business in this forum by selling its
products to national retailers, at least one of which has a
presence in this state.  By employing those national resellers,
Solar Tech says TAB knew (or should have known) that at least
some of its solar panels and charging units would make their way
into New Hampshire — in fact, at least one of them ultimately did
make its way to one of West Marine's New Hampshire stores.  Thus,
says Solar Tech, TAB knowingly and purposefully availed itself of
the privileges and benefits of selling its products in this
forum.

     The Court of Appeals for the First Circuit has, however,
rejected the "stream of commerce" theory as a basis for the
exercise of personal jurisdiction.  Instead, it has embraced the
plurality opinion of Justice O'Connor in <u>Asahi Metal Indust. Co.</u>
<u>v. Superior Court of California</u>, 480 U.S. 102 (1987), in which
the Court held:

     [A] defendant's awareness that the stream of commerce
     may or will sweep the product into the forum State does
     not convert the mere act of placing the product into
     the stream into an act purposefully directed toward the
     forum State.

Id. at 112.  See also Boit, 967 F.2d at 682.


Here, as in Boit, the only evidence of TAB's "contact" with
New Hampshire is the act of selling the allegedly infringing
products to West Marine (and/or providing West Marine with the
allegedly infringing photographs), followed by West Marine's sale
of one of those products at one if its New Hampshire retail
outlets to the paralegal employed by counsel for Solar Tech.
But, as in Boit, there is no evidence that TAB specifically
intended to serve the New Hampshire market.  As the Boit court
observed:

> For example, there is no evidence that [defendant]
> designed the product for Maine, advertised in Maine,
> established channels for providing regular advice to
> customers in Maine, or marketed the product through a
> distributor who had agreed to serve as a sales agent in
> Maine.  Accordingly, because "mere awareness" that a
> product may end up in the forum state does not
> constitute "purposeful availment," the district court
> could not have constitutionally exercised personal
> jurisdiction over [defendant].

Id. at 683.  Solar Tech has not pointed to anything in the record
that persuades the court that the outcome in this case should be
any different.

## Conclusion

This case presents a fairly close question of whether the court may properly exercise personal jurisdiction over the defendant, TAB.  But, as the Court of Appeals for the First Circuit has observed:

> [D]etermining personal jurisdiction has always been more an art than a science.  As Justice Marshall said, the jurisdictional determination is one in which few answers will be written in black and white.  The greys are dominant and even among them the shades are innumerable.

Swiss American Bank, 274 F.3d at 617-18 (citations and internal punctuation omitted).  So it is in this case.

Nevertheless, on balance, the court is persuaded that Solar Tech has failed to carry its burden of demonstrating that the court may exercise personal jurisdiction over TAB.  Specifically, Solar Tech has not shown that, despite its limited commercial use of the Internet and its sales through retailers with a presence in New Hampshire, TAB purposefully availed itself of the privilege of doing business in New Hampshire.

21

To be sure, TAB does have some contacts with this forum. They are, however, quite limited and "isolated." See Worldwide Volkswagen, 444 U.S. at 297–98.  The record does not suggest that those contacts are the product of any purposeful efforts to target the New Hampshire retail market.  Consequently, those limited contacts are not sufficient to warrant the conclusion that TAB purposefully availed itself of the privilege of conducting business in this forum or that it should have reasonably foreseen the possibility that it would be haled into court here.  See, e.g., Burger King, 471 U.S. at 475 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.") (citing Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

TAB's motion to dismiss (document no. 7) is, therefore, granted and Solar Tech's complaint is dismissed without prejudice.

22

**SO ORDERED.**

_____

Steven J. McAuliffe
Chief Judge

January 31, 2006

cc:  Thomas J. Donovan, Esq.
     Steven E. Grill, Esq.
     Donald L. Smith, Esq.

23